RECEIVED
IN ALEXANDRIA, LA
JUL - 1 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GEORGE FORD<br>D.O.C. #358861 | DOCKET NO. 08-cv-1052; SEC. P |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CORRECTIONS CORPORATION OF<br>AMERICA, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed by Plaintiff George Ford (D.O.C. #358861), pro se and in forma pauperis, on July 16, 2008; the complaint was amended on April 20, 2009. Ford is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center (WCC) in Winnfield, Louisiana. Plaintiff seeks injunctive and declaratory relief as well as class certification; he lists seven other inmates as plaintiffs, each of whom has filed his own action in this district. The plaintiff alleges numerous general violations by the defendants of the constitutional rights of all inmates.

### FACTS ALLEGED

Ford is the only named Plaintiff in the instant lawsuit, but seven other WCC inmates contemporaneously filed identical complaints in this District Court. The complaint filed by this group of plaintiffs is virtually identical to the complaint previously filed by WCC Inmates Michael Sampson, Bobby Young, Ralph

Sweat, Oscar James, Benjamin Wright, Chester Matthews, Stephen McGill, and Walter Houston.[1] The "new group" of plaintiffs, including Ford[2], took the typed complaint of the inmates listed above, erased the names of the eight previous plaintiffs, and wrote in their own names by hand.

Named as defendants are: Corrections Corporation of America (CCA), Warden Tim Wilkinson, Deputy Warden Tim Morgan, Deputy Warden Angel A. Martin, Chief of Security Virgil Lucas, Governor Bobby Jindal, and LDOC Secretary James LeBlanc.

A. ORIGINAL COMPLAINT

In the complaint filed by Ford and others, it is alleged that overcrowding at WCC and certain policies and procedures of LDOC and CCA have led to the violation of Plaintiff's constitutional rights, as well as the rights of other inmates at WCC through:

1. excessive, malicious and sadistic use of force by staff;
2. the use of chemicals such as tear gas and pepper spray to punish or threaten inmates, sometimes administered to an entire dormitory; then, a lack of medical treatment afterward;
3. four and five point hand restraints used for mentally ill inmates and without cause and without proper monitoring;
4. inmates placed in isolation for arbitrary reasons and not properly monitored;
5. inmates exposed to unreasonable risks of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards;
6. ignoring a known practice of "kicking out" where larger

---

[1] Docket numbers 08-915, 08-916, 08-917, 08-918, 08-920, 08-921, 08-923, and 08-924, respectively.

[2] The other Plaintiffs listed on the Complaint are Pat A. Guidry (the "lead Plaintiff"), Isaac McDowell, Edwin Lott, Paul Robbins, Todd Aucoin, Rodney Chatman, and Hernando C. Haley.

2

inmates force younger or more fragile inmates to give up food or personal belongings under threats of violence;
7. placing "hits" on certain inmates and "hiring" other inmates to beat up or intimidate them;
8. abusive and arbitrary disciplinary practices;
9. failing to conduct disciplinary hearings;
10. failing to investigate complaints of abuse by guards and thwarting inmates' efforts at contacting PZT (project zero tolerance);
11. failing to provide adequate mental health care;
12. failing to provide adequate physical health care, including vision, hearing, dental, and substance abuse treatment;
13. lack of programs, recreational items, or activities to occupy inmates;
14. lack of nutritional meals;
15. failing to give inmates privacy in the bathrooms;
16. failing to provide sufficient clothing, shoes, and linens;
17. inadequate access to the courts; and
18. retaliation against inmates who try to access the courts.

Of the above allegations, Ford claims that he was only *personally* subjected to: "lack of programming; lack of substance abuse counseling and treatment; inadequate food; lack of proper sanitation; inadequate medical care; inadequate clothing; failure to protect from harm, including theft of personal property, [sic] lack of security."[3]

Because the complaint provided only general and conclusory allegations (which were identical to those of another inmate), the Court ordered Plaintiff to amend the complaint and allege facts to support the conclusion that **his** constitutional rights were violated.

---

[3] Ford's name is hand-written in a blank on paragraph 12, page 6 of Document #1-4. In the original complaint filed by the first group of inmates, the name connected with the allegations presented in this paragraph were attributed to Inmate Benjamin Wright.

B. AMENDED COMPLAINT

Even after amending, Plaintiff does not allege or provide facts demonstrating that he was ever personally subjected to or threatened by any of the eighteen conditions presented in Plaintiff's complaint and summarized above. Plaintiff provides only the following allegations.

1. Medical Care

In the amended complaint, Plaintiff alleges that Nurse Booker denied him proper medical care. On or about August 26, 2007, Plaintiff made an emergency sick call and was taken to the infirmary at 7:00 a.m. experiencing back pain, vomiting, chills, and fever. He alleges that Nurse Booker acted with deliberate indifference by giving him only GRX Analgesic Balm and not "properly" treating his problems. [Doc. #7, p.2] He states that he made a second emergency sick call at 9:00 p.m. that night, but was sent back to the housing unit. An hour later, Plaintiff made a third emergency sick call, and the nurse did nothing for him. Plaintiff complains that he was not examined by a doctor for any of his emergency sick calls. After the last emergency sick call, Captain Knight and Lt. Mike were going to bring Plaintiff back to his housing unit, but Cpt. Knight saw Plaintiff's distress and had Plaintiff transported to LSU Medical Center's emergency room. Plaintiff was admitted to the hospital and remained hospitalized from Monday August 27 through Friday, August 31, 2007, during which

4

time he underwent blood tests, eye and throat examinations, and liver, kidney and prostate examinations. He also had a CT scan. The hospital doctors determined that Plaintiff had "kidney failure and an enlarged prostate." Plaintiff claims that the above facts show that Nurse Booker acted with deliberate indifference to his serious medical needs, and that Wilkinson, Morgan, and Martin are liable because Plaintiff was not examined by a doctor at WCC when he made the sick calls.

2. Privacy Concerns

Plaintiff complains of a lack of privacy while showering and using the toilet or urinal, as female guards can see into the bathroom area.

3. Security Concerns

Plaintiff also claims that a lack of security at WCC indicates deliberate indifference to the safety of the inmates. Plaintiff complains that female guards work on understaffed floors and cannot break up fights. Plaintiff claims that Defendants fail to create or enforce a policy that would prevent threats of violence.

## LAW AND ANALYSIS

First, to obtain a preliminary injunction the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to

enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. See Planned Parenthood of Houston & Southeast Texas v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).[4] Also, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); see also Sias v. Louisiana 146 Fed. Appx. 719 (5th Cir. 2005)("Sias's allegations are vague and conclusory and are therefore insufficient to establish a 42 U.S.C. §1983 claim.") (citations omitted); Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985)(A plaintiff may not plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought. (citations omitted)).

1. Medical Care

First, Plaintiff has provided no more than a conclusory allegation of deliberate indifference to his medical needs. While he made emergency sick calls at 7:00 a.m., 9:00 p.m., and 10:00 p.m. on a Sunday, the doctor was apparently not present on that day or during those times. Plaintiff *did* receive treatment from the nurse, although he disagreed with the method of treatment.

---

[4]For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. See Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 847 (5th Cir. 2004)(citations omitted).

6

However, a disagreement with medical treatment does not state a claim under the Eighth Amendment. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Moreover, while Plaintiff believes that the nurse should have done more to treat his symptoms or to diagnose him, it is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

Plaintiff was transported to the emergency room on order of Captain Knight the same day that he first complained of pain. He received treatment at the hospital, and he continues to receive medication at WCC. Plaintiff does not allege that a WCC doctor or any other defendant ever "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

To the extent he seeks injunctive relief, Plaintiff has not alleged a substantial threat that he will suffer irreparable injury without injunctive relief. The alleged denial of medical care happened on a single day in August of 2007. Plaintiff has not alleged any denial of medical care after that date. Plaintiff's claim for injunctive relief based on the foregoing is frivolous.

2. Privacy Concerns

Plaintiff complains of a general lack of privacy due to the fact that female guards can see into the showers and toilet/urinal area. Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration. Hudson v. Palmer, 468 U.S. 517, 527 (1984). The Fifth Circuit and other courts have upheld the use of female guards in areas that gave them view of unclothed male inmates. See Barnett v. Collins, 940 F.2d 1530 (5th Cir.1991)(table)(unpublished)(upholding use of female guards in guard towers giving full view of male inmates taking showers); Johnson v. Phelan, 69 F.3d 144, 147 (7th Cir. 1995)("If only men can monitor showers, then female guards are less useful to the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them."); Timm v. Gunter, 917 F.2d 1093, 1101-02 (8th Cir. 1990)(explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988)(stating that episodic and casual observation of male prisoners by female guards is justified by security concerns); Grummett v. Rushen, 779 F.2d 491, 496 (9th Cir. 1985)(stating that "[t]o restrict female guards from ... occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities"). Plaintiff has

8

only objected to the female officers' ability to view inmates in the toilet/shower area. He has presented only frivolous, rather than factual, allegations and has not alleged a constitutional violation. He cannot show a substantial likelihood that he will prevail on the merits, and he has not alleged a substantial threat that he will suffer irreparable injury if an injunction is not granted.

3. Lack of Protection

Plaintiff states that, at some point during his period of incarceration at WCC, he was involved in a physical fight with another inmate, for which he received a disciplinary report. [Doc. #7, p.4] He claims that the fight continued while the female guard yelled for the two inmates to stop fighting. Plaintiff attributes the fight to overcrowding at the facility, an insufficient number of male security guards, and female guards that cannot break up fights.

First, while he concludes that overcrowding "creates strife" among the inmates and that the threat of violence is "substantial and pervasive," Plaintiff provides no facts to support his claim. He mentions one physical fight between himself and another inmate, but does not allege whether he was attacked or whether he intervened in breaking up another fight. Plaintiff does not claim that he was ever threatened prior to the fight or that he reported any threat to WCC officials. Plaintiff does not complain that the

9

defendants failed to protect him from any specific threat to his safety. Instead, he seems to argue that the defendants failed in general to prevent the assault. Allegations of this sort, which rise only to the level of mere negligence, at best, are not sufficient to state a failure-to-protect claim. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(concluding that allegations amounting to a claim of negligence in the failure-to-protect context did not raise a non-frivolous constitutional claim).

To the extent that Plaintiff seeks injunctive relief, he has failed to allege a substantial threat that he will suffer irreparable injury without the granting of an injunction. As for hiring additional employees, federal courts are not prison managers. Ordinarily, courts accord great deference to the internal administrative decisions of prison officials. See Royal v. Clark, 447 F.2d 501 (5th Cir. 1971); Krist v. Smith, 439 F.2d 146 (5th Cir. 1971); Haggerty v. Wainwright, 427 F.2d 1137 (5th Cir. 1970). In fact, the Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." Shaw v. Murphy, 532 U.S. 223, 230 (2001); accord Washington v. Harper, 494 U.S. 210, 223-24 (1990); Turner v. Safley, 482 U.S. 78, 84-85 (1987).

Finally, it would be against the public interest to issue an injunction requiring the prison to employ additional male guards

based solely on Plaintiff's disagreement with the administration of the prison.

## CONCLUSION

Despite the opportunity and order to amend, Plaintiff did not present any factual allegations to support the conclusions presented in the complaint. For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED as frivolous** and for **failing to state a claim for which relief can be granted** under 28 U.S.C. §1915(e)(2)(b).

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Federal Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.**

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Federal Rule of Civil Procedure 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 1st day of _____, 2009.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE